# UNITED STATES DISTRICT COURT
# DISTRICT OF NEBRASKA

| | |
|---|---|
| MELANIE DAVIS,<br><br>            *Plaintiff*,<br><br>v.<br><br>COUNTRYSIDE VILLAGE, INC.,<br><br>            *Defendant* | Case No. _____<br><br><br>**COMPLAINT**<br><br>**Injunctive Relief Sought** |

Plaintiff Melanie Davis, by and through the undersigned counsel, brings this action against Countryside Village, Inc., a Nebraska business corporation, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this civil rights action against Defendant for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities.

2.      Defendant owns the Multi-tenant commercial building known as "Countryside Village Shopping Center" which to the extent was constructed and first occupied after January 26, 1993 or was altered after January 26, 1993 was required to be designed and constructed to be readily accessible to persons with disabilities. To the extent "Countryside Village Shopping Center" was not constructed or altered before January 26, 1993, it was required to remove barriers to access to the extent barrier removal was readily

- 1 -

achievable. "Countryside Village Shopping Center" contains architectural barriers to accessibility.

3.      The violations alleged in this complaint occurred at "Countryside Village Shopping Center", located at 8725 Countryside Plaza, Omaha NE 68114.

4.      Defendant's failure to provide equal access to "Countryside Village Shopping Center" violates the mandates of the ADA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

5.      Defendant's conduct constitutes an ongoing and continuous violation of the law.

6.      Accordingly, Plaintiff seeks a declaration that Defendant's facilities violate federal law and an injunction requiring Defendant to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiff further requests that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendant continues to comply with the relevant requirements of the ADA.

## JURISDICTION AND VENUE

7.      Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

8.      Venue in this judicial district is proper because Defendant is located and transacts business within this judicial district and has sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

**PARTIES**

9.      Plaintiff Melanie Davis is a resident of Omaha, Nebraska. Plaintiff Davis grew up in Omaha, Nebraska and lived there until she moved to Minnesota in 2005. While living in Minnesota, she visited Omaha many times, including five visits in 2016-2017. She moved back to Omaha in May 2017, where she now resides.

10.      Plaintiff Melanie Davis suffers from, and all times relevant hereto has suffered from, Cerebral Palsy, a condition that substantially limits her ability to walk and stand and is therefore a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq*. As a person with a disability, Plaintiff Davis has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

11.      Defendant Countryside Village, Inc., a Nebraska business corporation, is the owner of the real property and improvements which are the subject of this action, the Multi-tenant commercial building known as "Countryside Village Shopping Center", a place of public accommodation within the meaning of the ADA, located at the street address of 8725 Countryside Plaza, Omaha NE 68114.

**FACTUAL BACKGROUND**

12.      On April 11, 2019 Plaintiff Davis visited the Multi-tenant commercial building "Countryside Village Shopping Center" in Omaha, Nebraska. It had over 40 tenant businesses including restaurants, coffee shops, and retail stores.

13.      When Plaintiff arrived at "Countryside Village Shopping Center" there were approximately 324 total parking spaces and 7 parking spaces reserved as accessible parking spaces.

- 3 -

14.    A parking space at the southeast corner of the south building of "Country-side Village Shopping Center was reserved as an accessible parking space.

15.    This parking space had a curved adjacent access aisle that did not extend at least 5 feet perpendicular to the parking space for the full length of the parking space.

16.    The curb ramp connecting this parking space to the sidewalk surrounding the building had steep cross slopes and a steep running slope.

17.    The curb ramp connecting this parking space to the sidewalk surrounding the building projected into the access aisle, creating steep slopes.

18.    The photograph in Exhibit A to this Complaint depicts this reserved parking space and curb ramp as it appeared on the day of Plaintiff's April 11, 2019 visit.

19.    A parking space at the southeast corner of the north building of "Country-side Village Shopping Center was reserved as an accessible parking space.

20.    This parking space had a curved adjacent access aisle that did not extend at least 5 feet perpendicular to the parking space for the full length of the parking space.

21.    The curb ramp connecting this parking space to the sidewalk surrounding the building was mostly blocked by parking spaces where vehicles could obstruct the curb ramp.

22.    To the extent this ramp was not blocked by parking spaces, the ramp had steep cross slopes that made travel more difficult for Plaintiff.

23.    The photograph in Exhibit B to this Complaint depicts this reserved parking space and curb ramp as it appeared on the day of Plaintiff's April 11, 2019 visit.

24.    A parking space at the northeast corner of the north building of "Country-side Village Shopping Center" was reserved as an accessible parking space.

25.    This parking space had a curved adjacent access aisle that did not extend at least 5 feet perpendicular to the parking space for the full length of the parking space.

26.     The curb ramp connecting this parking space to the sidewalk surrounding the building was completely blocked by parking spaces where vehicles could obstruct the curb ramp.

27.     The photograph in Exhibit C to this Complaint depicts this reserved parking space and curb ramp as it appeared on the day of Plaintiff's April 11, 2019 visit.

28.     A parking space at the northwest corner of the north building of "Countryside Village Shopping Center" was reserved as an accessible parking space.

29.     Traveling south on the sidewalk from the curb ramp connecting this parking space to the sidewalk surrounding the building required turning on a sloped surface, creating steep cross slopes.

30.     The photograph in Exhibit D to this Complaint depicts this reserved parking space and curb ramp as it appeared on the day of Plaintiff's April 11, 2019 visit.

31.     A parking space at the northwest corner of the south building of "Countryside Village Shopping Center" was reserved as an accessible parking space.

32.     This parking space had a curved adjacent access aisle that did not extend at least 5 feet perpendicular to the parking space for the full length of the parking space.

33.     The nearby curb ramp providing access to the sidewalk surrounding the building was obstructed by parking spaces, where parked vehicles could completely obstruct the curb ramp.

34.     The photograph in Exhibit E to this Complaint depicts this reserved parking space and curb ramp as it appeared on the day of Plaintiff's April 11, 2019 visit.

35.     Two additional parking spaces were reserved as accessible parking spaces on the south side of the south building of "Countryside Village Shopping Center".

36.     Other curb ramps provided access to the raised sidewalks surrounding "Countryside Village Shopping Center", but these sidewalks had steep slopes, could be

obstructed by parked vehicles in standard parking spaces, and were not near accessible parking spaces.

37.    In light of the architectural barriers at "Countryside Village Shopping Center", Plaintiff perceives she cannot access the premises on an equal and independent basis, while Plaintiff want to return to patronize "Countryside Village Shopping Center", she will continue to be injured in the future if she visits until Defendant alters the premises to remove the architectural barriers.

38.    Plaintiff's desire to visit "Countryside Village Shopping Center" in the future is lessened because of her knowledge that barriers exist at the premises which affect him on the basis of his disability. Plaintiff intends to return to "Countryside Village Shopping Center". She plans to return and patronize "Countryside Village Shopping Center" when she learns that the premises have been made fully accessible to persons who use wheelchairs for mobility

39.    Plaintiff Davis is a resident of Omaha, Nebraska, and frequently travels throughout the greater Omaha area. Based on the lack of accessible parking and lack of accessible routes, Davis determined she cannot access "Countryside Village Shopping Center" on an equal and independent basis. Despite the inability to access "Countryside Village Shopping Center", Davis wants to be able access the shopping center in the future.

40.    In light of the architectural barriers at "Countryside Village Shopping Center", and the fact Plaintiff perceives she cannot access the premises on an equal and independent basis, Plaintiff does not want to visit "Countryside Village Shopping Center" in the future until she learns Defendant has altered the premises to remove the architectural barriers. Plaintiff would like to be able to patronize "Countryside Village Shopping Center", but she cannot, and these architectural barriers stop her from doing so. She plans to

return and patronize "Countryside Village Shopping Center" when she learns that the premises have been made fully accessible to persons who use wheelchairs for mobility.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

41.     On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

   a.   Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

   b.   Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

   c.   Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

   d.   Individuals with disabilities continually encounter various forms of discrimination; and

   e.   The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

42.    Congress explicitly stated that the purpose of the ADA was to:

   a.  Provide a clear and comprehensive mandate for the elimination of discrimi-
       nation against individuals with disabilities;

   b.  Provide clear, strong, consistent, enforceable standards addressing discrim-
       ination against individuals with disabilities; and

   c.  Invoke the sweep of congressional authority, including the power to en-
       force the Fourteenth Amendment and to regulate commerce, in order to ad-
       dress the major areas of discrimination faced day-to-day by individuals
       with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

43.    Title III of the ADA prohibits discrimination in the activities and facilities
of places of public accommodation, and requires places of public accommodation to
comply with ADA standards and to be readily accessible to, and independently usable by,
individuals with disabilities. 42 U.S.C. § 12181–89.

44.    The ADA provided places of public accommodation one and one half years
from its enactment to implement its requirements. The effective date of Title III of the
ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees
and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

45.    Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Jus-
tice ("DOJ") promulgated federal regulations to implement the requirements of Title III
of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III
regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Stand-
ards for Accessible Design, which were based upon the ADA Accessibility Guidelines
("1991 ADAAG") published by the Access Board on the same date. Public accommoda-
tions were required to conform to these regulations by January 26, 1992 (or January 26,

- 8 -

1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

46.     In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

47.     In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

48.     The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

49.     On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

50.     On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

51.     The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

52.     Defendant has discriminated against Plaintiff on the basis of her disabilities by failing to comply with the requirements of the ADA and the ADAAG with regard to "Countryside Village Shopping Center". A specific, though not exclusive, list of unlawful

physical barriers and ADA violations present at "Countryside Village Shopping Center" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

    a.  The "Countryside Village Shopping Center" customer parking lot had 324 total parking spaces but had less than rather than the required 8 complying with all elements of 502, in violation of ADAAG 208.2. Plaintiff requires accessible parking spaces which comply with all elements of 502 (including location, width, length, signage, slope, and presence of an access aisle) to ensure she can park safely, make a safe transfer between her vehicle and wheelchair, and travel safely between the parking lot to the building entrance.

    b.  The access aisle adjacent to the parking space reserved as an accessible parking space on the southeast side of the south building was shaped in a curve and did not extend the full length of the parking space, in violation of ADAAG 502.3.1 and 502.3.2. Plaintiff requires a full access aisle to safely transfer between her vehicle and the parking lot.

    c.  A built-up curb ramp projected into the access aisle adjacent to the parking space reserved as an accessible parking space on the southeast side of the south building had slopes steeper than 1:48, in violation of ADAAG 406.5 and 502.4. Plaintiff requires a level surface to safely make a transfer between her vehicle and the parking lot.

    d.  The access aisle adjacent to the parking space reserved as an accessible parking space on the southeast side of the north building was shaped in a curve and did not extend the full length of the parking space, in violation of

- 10 -

ADAAG 502.3.1 and 502.3.2. Plaintiff requires a full access aisle to safely transfer between her vehicle and the parking lot.

e.   The curb ramp providing access between the parking space reserved as an accessible parking space on the southeast side of the north building and the sidewalk surrounding the building could be obstructed by parked vehicles, forcing Plaintiff to take a route with cross slopes steeper than 1:48, in violation of ADAAG 405.3. Navigating curb ramps with steep cross slopes and nearby parked cars creates the risk of Plaintiff not being able climb the ramp independently or accidentally colliding with one of the parked cars.

f.   The access aisle adjacent to the parking space reserved as an accessible parking space on the northeast side of the north building was shaped in a curve and did not extend the full length of the parking space, in violation of ADAAG 502.3.1 and 502.3.2. Plaintiff requires a full access aisle to safely transfer between her vehicle and the parking lot.

g.   The curb ramp providing access between the parking space reserved as an accessible parking space on the northeast side of the north building and the sidewalk surrounding the building was completely obstructed by parking spaces, in violation of ADAAG 502.7. Plaintiff cannot use a curb ramp when the base of the ramp is occupied by a parked vehicle.

h.   The curb ramp providing access between the parking space reserved as an accessible parking space on the northeast side of the south building and the sidewalk surrounding the building required turning on the ramp run to access the south sidewalk, in violation of ADAAG 405.3. Turning on a ramp run creates cross slopes that make travel more difficult for Plaintiff.

- 11 -

i.   The access aisle adjacent to the parking space reserved as an accessible parking space on the northwest side of the south building was shaped in a curve and did not extend the full length of the parking space, in violation of ADAAG 502.3.1 and 502.3.2. Plaintiff requires a full access aisle to safely transfer between her vehicle and the parking lot.

j.   The curb ramp providing access between the parking space reserved as an accessible parking space on the northwest side of the south building and the sidewalk surrounding the building was completely obstructed by parking spaces, in violation of ADAAG 502.7. Plaintiff cannot use a curb ramp when the base of the ramp is occupied by a parked vehicle.

k.   The parking spaces reserved as accessible parking spaces otherwise complying with the ADAAG in the "Countryside Village Shopping Center" customer parking lot were not dispersed and located on the shortest accessible routes to the entrances of tenant businesses, in violation of ADAAG 208.3.1.

53.   The above listing is not to be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiff or which exist at "Countryside Village Shopping Center". To qualify as an accessible parking facility, and for a parking space to qualify an accessible parking space, the space must be located on an accessible route, the route must be the shortest accessible route, the space must be marked by appropriate signage, the space must be flanked by an access aisle, and the space and access aisle must comply with sloping requirements. ADAAG 206; 208; 216, Chapter 4 including but not limited to 402, 403, 404, 405, and 406; and 502 – including, but not limited to, 502.4 which governs the floor or ground surfaces of both parking spaces and access aisles.

54.     In order to fully remedy the discriminatory conditions, Plaintiff requires an inspection of "Countryside Village Shopping Center" in order to photograph and measure all such barriers to access and violations of the ADA and the ADAAG.

55.     Compliance with the ADA standards, and the ADAAG is required by 42 U.S.C §§ 12182 and 12183 to the extent the facility was designed and constructed or altered after January 26, 1993, and the violations to the ADAAG requirements are not a result of compliance being structurally impracticable. 28 C.F.R § 36.401(a)(1).

56.     In the alternative, to the extent any architectural elements were constructed prior to that date, compliance with the ADA standards and the ADAAG is required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable. Compliance with the ADA standards and the ADAAG is readily achievable by Defendant due to the lack of difficulty and low cost of remedying the above-listed barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, creating accessible parking spaces. 28 C.F.R. § 36.304(b).

57.     Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

- 13 -

58.    As a person with a disability, Plaintiff Davis has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

59.    Without injunctive relief, Defendant's failure to remove accessibility barriers will continue to cause injury to Plaintiff, who will continue to be unable to independently access "Countryside Village Shopping Center" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of her rights under the ADA.

## FIRST CAUSE OF ACTION
### Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

60.    Plaintiff incorporates and realleges the above paragraphs.

61.    Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

62.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

63.    Defendant has discriminated against Plaintiff and others in that it failed to make its place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above. Plaintiff Davis has been denied

- 14 -

full and equal access to "Countryside Village Shopping Center" and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

64.   Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. Defendant's violations of the ADA and ADAAG are ongoing.

65.   Defendant has failed to remove architectural barriers to full and equal access by Plaintiff Davis, even though removing the barriers was required and is readily achievable.

66.   Defendant has discriminated against Plaintiff by failing to maintain the accessibility of its premises and by failing to institute policies and procedures to ensure the maintenance of accessible features at its premises.

67.   Plaintiff Davis plans to visit "Countryside Village Shopping Center" again in the near future. Plaintiff is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm upon her planned return visit to "Countryside Village Shopping Center" unless and until Defendant is required to remove the physical barriers to access and ADA violations that exist at Defendant's place of public accommodation, including those set forth specifically herein.

68.   This Court has authority under 42 U.S.C. § 12188 to grant Plaintiff injunctive relief, including an order requiring Defendant to make "Countryside Village Shopping Center" readily accessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "Countryside Village Shopping Center" until such time as Defendant cures the access barriers.

69.    Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendant, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

**WHEREFORE**, Plaintiff respectfully requests:

a.  Plaintiff demands a trial in Omaha, Nebraska.

b.  That the Court issue a Declaratory Judgment that determines that Defendant's facilities, at the commencement of the instant suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG.

c.  That the Court award nominal damages.

d.  That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendant from continuing its discriminatory practices; including an order directing Defendant to remove all barriers to the maximum extent feasible or in the alternative make all readily achievable alterations to its facilities so as to remove physical barriers to access and make its facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA; and also including an order requiring Defendant to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

e.  That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, or as otherwise provided by law; and

- 16 -

    f.  That the Court issue such other relief as it deems just and proper, and/or is

       allowable under Title III of the ADA.

DATED:  <u>June 5, 2019</u>

<div style="margin-left:40%">

<u>/s/ Padraigin L. Browne</u>
Padraigin L. Browne (MN Bar # 389962)
Browne Law LLC
8530 Eagle Point Blvd, suite 100
Lake Elmo, MN 55042
E-mail: paddy@brownelawllc.com
Phone: (612) 293-4805

</div>